UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN

JULIUS L. IVY,

    Petitioner,

v.                                        Case No. 13-C-0208

MICHAEL BAENEN,

    Respondent.

ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS,
DENYING CERTIFICATE OF APPEALABILITY,
AND DISMISSING CASE

Julius Ivy is seeking a writ of habeas corpus respecting his judgment of conviction in Brown County Circuit Court, Case No. 2009-CF-1214, as party to the crimes of armed robbery with use of force and false imprisonment in violation of Wis. Stats. §§ 939.05, 943.32(2) and 940.30. The court sentenced Ivy to 15 years initial confinement with ten years extended supervision and a restitution award. (Doc. 13-1, Ex. A.) Ivy sought post-conviction relief alleging ineffective assistance of counsel and challenging the restitution award. After his motion was denied, Ivy filed a direct appeal raising the same arguments. (Doc. 13-2, Ex. B.) The Wisconsin Court of Appeals affirmed, and the Wisconsin Supreme Court denied his petition for review. *State v. Ivy*, 2012 WI App 27, 339 Wis. 2d 491, 809 N.W.2d 901. Ivy did not file a petition for writ of certiorari with the United States Supreme Court. Respondent moved to dismiss asserting that the petition was mixed. Ivy then withdrew his claim of ineffective assistance of appellate counsel which he had failed to exhaust. (Docs. 10-12.) Now, for the reasons set forth below, the petition will be denied.

A federal court may grant habeas relief only if the petitioner demonstrates that he is in custody "in violation of the Constitution or laws ... of the United States." 28 U.S.C. § 2254(a) (1996). To prevail, Ivy must demonstrate that the state court's claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court. *Redmond v. Kingston*, 240 F.3d 590 (7th Cir. 2001) (citing 28 U.S.C. § 2254(d)(1) and *Williams v. Taylor*, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 389 (2000). "A state-court decision involves an unreasonable application of this Court's clearly established precedents if the state court applies this Court's precedents to the facts in an objectively unreasonable manner." *Brown v. Payton*, 544 U.S. 133, 141, 125 S. Ct. 1432, 161 L. Ed. 334 (2005) (internal citations omitted).

The United States Supreme Court decision in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), provides the clearly established federal law applicable to Ivy's ineffective assistance of counsel claims. Under *Strickland*, the court first determines whether counsel's representation fell below an objective standard of reasonableness. Then, it asks whether there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Padilla v. Kentucky*, 559 U.S. 356, 366, 130 S. Ct. 1473, 176 L. Ed.2d 284 (2010) (quoting *Strickland*, supra, at 688, 694).

The standards created by *Strickland* and § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), are highly deferential, and "when the two apply in tandem, review is 'doubly' so." *Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770, 788, 178 L.Ed.2d 624 (2011) (quoting *Knowles v. Mirzayance*, 556 U.S.

2

111, 129 S. Ct. 1411, 1420, 173 L. Ed.2d 251 (2009)). When the AEDPA standard is applied to a *Strickland* claim, the analysis is as follows:

> The question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable—a substantially higher threshold. And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard.

*Knowles*, 129 S. Ct. at 1420 (internal citations and quotations omitted).

With this framework in mind, the court turns to Ivy's claim that counsel was ineffective due to his failure to "counter balance the falsified testimony by an accomplice due to concessions by the state." Ivy's reply brief explains that Enrique Fonseca, an accomplice, received concessions for his testimony despite giving five different police statements. According to Ivy, counsel failed to "secure all three procedural safeguards of (1) full disclosure of terms and agreements (2) full cross-examination of accomplice (3) a cautionary jury instruction such as Wis. JI 245." (Doc. 14 at 3.)

In addressing this claim, the Wisconsin Court of Appeals applied the *Strickland* principles although it did not cite the Supreme Court's decision. Consistent with the first prong of *Strickland*, the Wisconsin Court of Appeals found deficient performance in counsel's failure to solicit testimony from Fonseca regarding use immunity and failure to seek a jury instruction regarding the weight that it may give to the testimony of accomplices. Nevertheless, the appeals court found no prejudice.

A thorough review of the record and the state court's decision, reveals that the Wisconsin Court of Appeals took the applicable constitutional standard seriously and

produced an answer within the range of defensible positions. *Mendiola v. Schomig*, 224 F.3d 589, 592 (7th Cir. 2000).

In reaching its decision, the Wisconsin Court of Appeals explained that Fonseca had given several statements to the police prior to trial and was charged with armed robbery and false imprisonment. *Ivy*, 2012 WI App 27, ¶ 3. He reached an understanding with prosecutors, who agreed to recommend seven years initial confinement with five years of extended supervision, and a further understanding that the prosecutors would recommend a lesser sentence if he testified against Ivy. *Id.* Fonseca invoked his Fifth Amendment right during Ivy's trial. *Id.* at ¶ 4. Outside the jury's presence, Fonseca was granted use immunity for his testimony. *Id.*

The record reveals that prior to Fonseca's testimony and outside the presence of the jury, the parties discussed use immunity and whether the jury could hear such evidence:

> THE COURT: Well, but then I guess I would need to explore with the lawyers then on cross-examination is Mr. -- Mr. Panburn entitled to in front of this jury to inquire isn't it true that you've been granted immunity today so any testimony you offer today cannot be used against you?
>
> MR. JOHSON [STATE]: I don't believe they're allowed to hear that. We do that outside the presence of the jury.
>
> MR. PANGBURN: The times that I've done this, it's been outside the presence of the jury. So if there is -- if there is a law or a case that allows otherwise, I'm not familiar with it. I'm not saying that there isn't, but I'm no expert.

4

(Doc. 13-10, Ex. I at 291-292.)[1] The court proceeded to grant "transactional" immunity, but described use immunity. (*Id.*)

During his testimony, the jury learned Fonseca had given different accounts to the police regarding the events surrounding the charges against Ivy. Fonseca's initial statement to police claimed he was not involved and never mentioned Ivy. (Doc. 13-10, Ex. I at 344-345.) However, at trial, Fonseca testified that he and Ivy planned to "hit a lick" – rob Fonseca's old boss's house July 11, 2009, and that Ivy participated in the robbery. (Doc. 13-10, Ex. I at 320-342.) Fonseca testified that he took Ivy to Family Dollar to buy "gloves and do-rags" (Doc. 13-10, Ex. I at 317-319), but Ivy later testified that Fonseca asked him to do that instead of contributing gas money (Doc. 13-11, Ex. J at 488.)

The prosecution asked Fonseca about his prior inconsistent statements, the details of his plea agreement, his cooperation, and motives for his testimony. (Doc. 13-10, Ex. I at 344-350.) The jury learned that Fonseca told police about Ivy's alleged involvement prior to talking with anyone from the district attorney's office. (Doc. 13-10, Ex. I at 349.) Fonseca confirmed that in exchange for pleading guilty, the government agreed to recommend a sentence of seven years in prison with five years extended supervision, with the possibility that the government would recommend less time in exchange for his cooperation. (Doc. 13-10, Ex. I at 349-350.) Defense counsel then cross-examined Fonseca regarding the "lies" in his prior statements, as well as the inconsistencies in his testimony. (Doc. 13-10, Ex. 1 at 375-410).

---

[1] The page number citations are to the actual page number of the transcript rather than the page stamp from the EM/ECF filing.

5

As the Wisconsin Court of Appeals acknowledged, prejudice under *Strickland* requires a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Ivy*, 2012 WI App 27, ¶ 11. The Wisconsin Court of Appeals candidly admitted that determining prejudice was more difficult than determining deficient performance, and reasonably concluded that the prejudice asserted by Ivy fell short of the standard:

> At trial, Fonseca testified that he, like Ivy, had been charged with robbery and false imprisonment, and that the prosecutor had offered to recommend seven years' confinement and five years' extended supervision as part of a plea deal. In addition, the prosecutor told Fonseca he would consider recommending a more lenient sentence in exchange for Fonseca's cooperation in the case against Ivy.
>
> Because the jury was presented with evidence regarding Fonseca's motive for testifying against Ivy, the additional information that Fonseca had been granted immunity for his testimony was not likely to alter the jury's analysis of his credibility. Fonseca all but stated that he was hoping to gain a more favorable plea agreement from the prosecutor in exchange for his testimony. Because of this, the jury had the opportunity to determine whether it could place credence on Fonseca's testimony connecting Ivy with the crimes. See *Penister v. State*, 74 Wis.2d 94, 103, 246 N.W.2d 115 (1976).
>
> Ivy's contention appears to be premised on his belief that the jury regarded Fonseca's testimony as truthful because it appeared Fonseca was voluntarily incriminating himself. By implication, Ivy would have us conclude that disclosure of the immunity would have led the jury to conclude that Fonseca had nothing to lose by offering false testimony. To the contrary, such disclosure might have had the effect of bolstering Fonseca's credibility. Immunization does not exempt a witness from prosecution for perjury or false swearing. Wis. Stat. § 972.08(1)(a). Because Fonseca had already reached a deal with prosecutors in exchange for his truthful testimony, he had little to gain from lying; false testimony would have only made him vulnerable to additional charges. We cannot perceive how the immunity grant could have acted as an inducement for Fonseca to testify falsely, or how the jury would have regarded him as less credible if it had known of the immunity.

*Ivy*, 2012 WI App 27, ¶¶ 15-16.

The Wisconsin Court of Appeals rejected Ivy's argument that prejudice may be presumed under *State v. Nerison*, 136 Wis. 2d 37, 401 N.W.2d 1 (1987). *Ivy,* 2012 WI App 27, ¶ 18. Because Fonseca had disclosed the prosecutor's offer to make a favorable plea recommendation in exchange for his testimony, the Court of Appeals concluded that the jury could adequately assess his credibility without knowing that he had received use immunity. *Id.* That decision by the Court of Appeals was neither contrary to nor an unreasonable application of *Strickland*. Moreover, it was not an unreasonable determination of the facts in light of the evidence presented at trial court. Fonseca implicated Ivy before meeting with the prosecution, and the jury was aware that Fonseca had repeatedly lied to the police prior to implicating Ivy. Further, most of counsel's cross-examination focused on credibility issues – Fonseca's lies to police, his use of crack cocaine at the time of the incident, and Fonseca's failure to say anything during his preliminary hearing testimony or the four earlier statements about Ivy asking for a rope. (Doc. 13-10, Ex. I at 375-397.)

The Wisconsin Court of Appeals' rejection of Ivy's argument that counsel should have requested a jury instruction concerning the weight of the testimony to be given the accomplices was also reasonable. The jury was given the standard instruction regarding credibility, Wis. JI Criminal 300 (2000), which requires the jury to determine whether the witness has an interest in the outcome and possible motives for offering false testimony. Nevertheless, Ivy argues that he was entitled to Wisconsin JI Criminal 246 "Testimony of Witness Granted Immunity or Other Concessions," which includes the following direction: "This witness, like any other witness, may be prosecuted for testifying falsely. You should

7

consider whether receiving [immunity][concessions] affected the testimony and give the testimony the weight you believe it is entitled to receive." (Doc. 13-2 at 31 of 40.)

The Wisconsin Court of Appeals agreed with Ivy that counsel should have requested the jury instruction concerning the weight to be given to the testimony of accomplices, but the court concluded that Ivy had not established a reasonable probability that the jury would have acquitted him absent the error. *Ivy*, 2012 WI App 27, ¶ 19. The jury was given the standard instruction requiring the jury to consider whether the witness has an outcome in the trial and a witness's possible motives for offering false testimony. *Id.* The Court of Appeals found, and this court finds no basis to disagree that the jury heard sufficient testimony to challenge Fonseca's credibility irrespective of any grant of immunity. *Id.* For the reasons stated above, Ivy cannot show that the state appellate court either contradicted or unreasonably applied the *Strickland* analysis or that the decision was based on an unreasonable determination of the facts. Therefore,

IT IS ORDERED that Julius Ivy's petition for writ of habeas corpus is denied.

IT IS FURTHER ORDERED that a certificate of appealability is denied. Ivy has failed to make a substantial showing of the denial of a constitutional right.

IT IS FURTHER ORDERED that this case is dismissed.

Dated at Milwaukee, Wisconsin, this 30th day of May, 2015.

BY THE COURT

/s/ C.N. Clevert, Jr.
C.N. CLEVERT, JR.
U.S. DISTRICT JUDGE

8

Case 2:13-cv-00208-CNC   Filed 05/30/15   Page 8 of 8   Document 16